[Cite as *Strickler v. Columbus*, 2014-Ohio-1380.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Carla J. Strickler, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 13AP-464 |
| v. | : | (C.P.C. No. 12CVD-01-384) |
| City of Columbus et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on March 31, 2014

*Renny J. Tyson Co., LPA*, and *Renny J. Tyson*, for appellant.

*Richard C. Pfeiffer, Jr.*, City Attorney, and *Wendy S. Kane*, for appellee City of Columbus.

*Michael DeWine*, Attorney General, and *Naveen V. Ramprasad*, for appellee Administrator, Ohio Bureau of Workers' Compensation.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Plaintiff-appellant, Carla J. Strickler, appeals a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, the City of Columbus and Stephen Buehrer, the administrator of the Bureau of Workers' Compensation ("BWC"). For the following reasons, we affirm.

{¶ 2} Strickler worked for the Columbus Division of Police from 1981 to 2010. On April 18, 2007, Strickler injured herself while at the police firing range practicing with a

newly issued firearm.  Strickler slipped on loose shell casings and, as she fell, she cracked her right knee on the concrete floor.

{¶ 3}  Strickler was initially treated at a hospital emergency room.  She then received physical therapy.  Despite the physical therapy, Strickler continued to experience stiffness, instability, and pain in her knee.  At that point, Strickler's physician referred her to Dr. Scott Van Steyn, an orthopedic surgeon.  Van Steyn examined Strickler and reviewed the results of an MRI scan performed on May 11, 2007.  Van Steyn's initial impression was that Strickler's symptoms related to an aggravation of pre-existing arthritis and a possible chondral fracture.[1]  Van Steyn treated Strickler's knee with steroid injections, and he prescribed further physical therapy.  Unfortunately, Strickler's knee did not improve.

{¶ 4}  Over a year after Strickler's injury, Van Steyn performed an arthroscopy of Strickler's right knee.  During that May 22, 2008 procedure, Van Steyn observed osteoarthritis and a chondral fracture.  He repaired the damaged cartilage.

{¶ 5}  After her injury, Strickler had filed a claim for compensation and benefits with the BWC.  The Industrial Commission allowed the claim in part, but disallowed the claim with regard to the conditions of "right knee chondral fracture," "osteoarthritis right knee," and "substantial aggravation of pre-existing osteoarthritis right knee."  Pursuant to R.C. 4123.512, Strickler appealed the Industrial Commission's order to the trial court.

{¶ 6}  At a bench trial, Strickler argued that she was entitled to participate in the workers' compensation fund for two conditions:  the chondral fracture and the substantial aggravation of her pre-existing osteoarthritis.  To substantiate this argument, Strickler offered her own testimony, the testimony of Van Steyn, and her medical records.

{¶ 7}  On May 17, 2013, the trial court issued a judgment that allowed Strickler to participate in the workers' compensation fund for the condition of "right knee chondral fracture," but disallowed participation for the condition of "substantial aggravation of pre-existing osteoarthritis right knee."  Strickler now appeals that judgment, and she assigns the following errors:

---

[1] A chondral fracture is a fragmenting or fracturing of the cartilage that covers the ends of bones where they come together to form joints.

Assignment of Error No. 1

The trial court erred in its Decision denying Plaintiff-Appellant's claim for substantial aggravation of pre-existing osteoarthritis by holding Plaintiff-Appellant to a higher standard of proof than required by law.

Assignment of Error No. 2

The trial court erred in its Decision denying Plaintiff-Appellant's claim for substantial aggravation of pre-existing osteoarthritis by issuing a Decision contrary to the greater and manifest weight of the evidence.

{¶ 8} To establish a right to participate in the workers' compensation fund, a claimant must show by a preponderance of the evidence: (1) an injury received in the course of, and arising out of, employment, and (2) a proximate causal relationship between the injury and the harm or disability. *Bennett v. Admr., Ohio Bur. of Workers' Comp.*, 134 Ohio St.3d 329, 2012-Ohio-5639, ¶ 18. Injuries covered by workers' compensation do not include "condition[s] that pre-existed an injury unless [the] pre-existing condition is substantially aggravated by the injury." R.C. 4123.01(C)(4). Thus, when a claimant seeks participation in the fund for a substantial aggravation of a pre-existing condition, the claimant bears the additional burden of proving by a preponderance of the evidence that the condition existed prior to the date of injury, and the injury substantially aggravated the pre-existing condition.[2]

{¶ 9} Here, Strickler first argues that the trial court required her to prove her case by more than a preponderance of the evidence. Strickler, however, cannot point to any place in the record where the trial court misstated the burden of proof. Strickler's only "evidence" of the application of a more onerous standard is the trial court's failure to decide in her favor based on the evidence in the record. Consequently, to decide the first assignment of error, we must determine whether the manifest weight of the evidence supports the judgment. If it does, then the trial court appropriately assessed the evidence

---

[2] R.C. 4123.01(C)(4) specifies the type of evidence that a claimant must produce to carry the burden of proving substantial aggravation. *Id.* ("[A] substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results."). R.C. 4123.01(C)(4) is silent, however, regarding the type of evidence necessary to demonstrate the pre-existing nature of the condition at issue.

under the preponderance-of-the-evidence standard.  If it does not, then the trial court erred in its assessment of the evidence and Strickler should prevail.  Since Strickler's second assignment of error contends that the judgment is against the manifest weight of the evidence, we will address the first and second assignments of error together.

{¶ 10} Judgments supported by competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence.  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. " 'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief." ' "  (Emphasis deleted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).  In determining whether a judgment is against the manifest weight of the evidence, a reviewing court construes the evidence in favor of the judgment and the findings of fact.  *Eastley* at ¶ 21.

{¶ 11} Here, at trial, defendants disputed whether Strickler had osteoarthritis in her right knee prior to the April 18, 2007 injury.  Prior to the injury, Strickler had never experienced pain, instability, or stiffness in her right knee.  As a consequence, no medical professional had diagnosed Strickler with arthritis of the right knee before April 18, 2007, and no x-rays or MRI scans of Strickler's right knee pre-date the injury.  Lack of pre-injury evidence, however, does not preclude a claimant from establishing the existence of a pre-existing condition.  *Lake v. Anne Grady Corp.*, 6th Dist. No. L-12-1330, 2013-Ohio-4740, ¶ 20; *Gardi v. Bd. of Edn. of the Lakewood City School Dist.*, 8th Dist. No. 99414, 2013-Ohio-3436, ¶ 12.  For example, in *Brate v. Rolls-Royce Energy Sys., Inc.*, 5th Dist. No. 12CA000001, 2012-Ohio-4577, the claimant's treating physician testified that, during a post-injury arthroscopy of the claimant's right knee, he observed arthritic changes that, due to their advanced pathology, pre-existed the claimant's accident.  *Id.* at ¶ 26, 31.  The Fifth District Court of Appeals held that this testimony, along with expert testimony that the workplace accident worsened the claimant's osteoarthritis, was sufficient to overcome the employer's motion for summary judgment.

{¶ 12} Like the treating physician in *Brate*, the treating physician in *Bohl v. Cassens Transp. Co.*, 3d Dist. No. 13-11-36, 2012-Ohio-2248, referred to post-injury

evidence to explain his basis for concluding that the claimant's cervical degenerative disc disease pre-dated the claimant's injury. The treating physician pointed to the bone spurs visible in the claimant's post-injury x-rays and MRI scans, and testified that they took years to develop and were present before the injury. *Id.* at ¶ 24-25. The Third District Court of Appeals relied on this testimony, along with the physician's opinion that substantial aggravation had occurred and the declining results of range-of-motion tests, to conclude that the claimant had proven a substantial aggravation of a pre-existing condition.

{¶ 13} Strickler did not provide any evidence akin to that introduced in *Brate* or *Bohl*. Van Steyn, Strickler's physician, testified repeatedly that Strickler's post-fall symptoms resulted, in part, from the substantial aggravation of pre-existing osteoarthritis. Implicit in this testimony is Van Steyn's opinion that Strickler had osteoarthritis in her right knee prior to her injury. Yet, unlike the physicians in *Brate* and *Bohl*, Van Steyn never explained why he held this opinion. The only evidence establishing a possible explanation came from Strickler, who testified that her May 11, 2007 MRI scan showed arthritis in her right knee and she "was told * * * it just can't appear overnight, so I had to have it before[ ] [the April 18, 2007 fall]." (Tr. 44.) Strickler, however, failed to identify who provided this explanation to her, so we cannot attribute it to Van Steyn. Moreover, a non-medical professional's reiteration of the unnamed person's explanation has little persuasive power.

{¶ 14} Perhaps recognizing the inadequacy of her own evidence, Strickler contends that defendants conceded below that she had arthritis in her right knee prior to her injury. Strickler is wrong. Defendants admitted that, at the time of trial, Strickler had arthritis. Indeed, the evidence unequivocally proves that fact, as no one disputes Van Steyn's observation of arthritic changes in Strickler's knee during the May 22, 2008 arthroscopy. Defendants, however, disputed Strickler's contention that her arthritis pre-dated her fall. They presented expert testimony that no one could determine, based on the information in the record, when Strickler's arthritis developed.

{¶ 15} In its role of trier of fact, a trial court is not required to automatically accept expert opinions offered from the witness stand. *State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, ¶ 71; *H.R. v. L.R.*, 181 Ohio App.3d 837, 2009-Ohio-1665, ¶ 15 (10th Dist.). A

trial court, however, may not arbitrarily ignore expert opinion; a reason for the rejection of an expert opinion must be objectively present in the record. *White* at ¶ 71; *H.R.* at ¶ 15. Here, the trial court had an "objectively present" reason to disregard Van Steyn's opinion: Van Steyn failed to explain the basis on which he arrived at his opinion that Strickler's arthritis pre-existed her fall. In the absence of such an explanation, Van Steyn's opinion carries little, if any, weight. We thus conclude that the trial court did not err in finding that Strickler failed to carry her burden to prove her case by a preponderance of the evidence. Accordingly, we overrule both of Strickler's assignments of error.

{¶ 16} For the foregoing reasons, we overrule Strickler's assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, J., concurs.
TYACK, J., dissents.

TYACK, J. dissenting.

{¶ 17} The issues in this case are relatively straight forward. Did the evidence before the trial court support a finding that a Columbus police officer did not aggravate pre-existing arthritis when she fell at the police firing range? And, did her fall cause arthritis in her right knee? There is no question that she seriously injured her right knee. There is no debate that she now suffers from a painful arthritic condition.

{¶ 18} Strickler fell on April 18, 2007. Less than four weeks later, an MRI showed that Strickler had arthritis. Her treating orthopedic surgeon diagnosed her as suffering from a right knee chondral fracture and substantial aggravation of osteoarthritis. He performed surgery on her one year later and observed both osteoarthritis and the chondral fracture. Dr. Van Steyn repaired the damaged cartilage in Officer Strickler's knee.

{¶ 19} Officer Strickler had applied for workers' compensation. For reasons which are not apparent from the record before us, the Industrial Commission of Ohio ("commission") refused to recognize either the fracture or the osteoarthritis. It should be noted that both osteoarthritis right knee and substantial aggravation of pre-existing osteoarthritis were sought to be recognized as conditions. Given the evidence before it, the commission should have recognized one or the other.

{¶ 20} As allowed under workers' compensation law, since the issue was the right to participate in the workers' compensation system, counsel for Officer Strickler pursued an appeal to the common pleas court. There, counsel argued what he thought was his stronger case, namely that Officer Strickler had aggravated pre-existing arthritis already present in her knee. This was consistent with the opinion of her treating physician. However, counsel did not abandon the theory that the fall caused osteoarthritis.

{¶ 21} Again, if the arthritis pre-existed the fall, it was substantially aggravated. If the arthritis was caused by the fall, then it should still be recognized. No expert claimed she did not have osteoarthritis as of the MRI less than four weeks after her fall.

{¶ 22} Interestingly, the majority opinion makes little mention of the testimony of Kenneth Mankowski, M.D., who testified on behalf of the named defendants. Dr. Mankowski acknowledged that Carla Strickler had painful osteoarthritis of the right knee, but testified that it was impossible to tell if the arthritis pre-existed the fall or did not pre-exist the fall. However, Dr. Mankowski acknowledged the MRI showing Strickler had osteoarthritis four weeks after the fall. He also acknowledged that the osteoarthritis had gotten worse. But again, Dr. Mankowski testified no one could say the condition was pre-existing, although Dr. Van Steyn, who had performed surgery on Strickler's knee, had testified that the osteoarthritis was present prior to the fall and made worse by the fall. Under Dr. Mankowski's version, the osteoarthritis should have been recognized as a condition initiated by the fall, not as a pre-existing condition which was aggravated by the fall.

{¶ 23} In short, no one said that Officer Strickler did not have osteoarthritis of the right knee and that the osteoarthritis was not worse after the fall. The debate of experts was only whether the condition pre-existed the fall or was caused by the fall. The trial court had to recognize either osteoarthritis of the right knee or substantial aggravation of osteoarthritis of the right knee. The trial court's failure to recognize one of the two was clearly against the manifest weight of the evidence since no evidence indicated Officer Strickler did not have a much worse knee condition caused by the fall.

{¶ 24} The trial court erred. I would correct that error. I dissent from the failure of the majority of this panel to correct that error.

_____