[Cite as *Briggs v. Franklin Pre-Release Ctr.*, 2014-Ohio-2477.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

| | | |
|---|---|---|
| SAMANTHA J. BRIGGS, | : | CASE NO. CA2013-10-035 |
| Appellant, | : | |
| | : | O P I N I O N<br>6/9/2014 |
| - vs - | : | |
| | : | |
| FRANKLIN PRE-RELEASE<br>CENTER, et al., | : | |
| | : | |
| Appellees. | : | |
| | : | |

CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CVD20120016

Larrimer and Larrimer, Thomas L. Reitz, 165 North High Street, Columbus, Ohio 43215, for appellant

Isaac, Wiles, Burkholder and Teetor, J. Miles Gibson, Two Miranova Place, Suite 700, Columbus, Ohio 43215, for appellee, Franklin Pre-Release Center, Department of Rehabilitation & Corrections

Mike DeWine, Ohio Attorney General, 30 East Broad Street, Columbus, Ohio 43215, for appellee, Administrator, Bureau of Workers' Compensation

Justine S. Casselle, Assistant Attorney General, 150 East Gay Street, 23rd Floor, Columbus, Ohio 43215, for appellee, Administrator, Bureau of Workers' Compensation

**M. POWELL, J.**

{¶ 1} Plaintiff-appellant, Samantha Briggs, appeals the decision of the Madison

County Court of Common Pleas granting judgment notwithstanding the verdict in favor of defendants-appellees, Franklin Pre-Release Center and Stephen Buehrer, the administrator of the Bureau of Workers' Compensation (BWC). For the reasons detailed below, we affirm the decision of the trial court.

{¶ 2} Briggs was employed as a corrections officer at the Franklin Pre-Release Center, a facility operated by the Ohio Department of Rehabilitation and Correction, located in Madison County, Ohio. On December 9, 2010, Briggs was receiving Advanced Survival Training in the course of her employment. The training was designed to enhance Briggs' ability to deal with unruly inmates. During the course of the training, Briggs was injured when two adult males fell on top of her during an exercise and her head was pulled violently to the left.

{¶ 3} As a result of that incident, Briggs filed a workers' compensation claim for the following injuries: sympathetic dystrophy of left upper limb, brachial plexus injury, and major depression. The claim for those three conditions was subsequently approved by the BWC. Thereafter, Briggs sought to amend her claim to include additional conditions relating to her spine and back, including a C3-4 disc protrusion and T4-7 syrinx.[1] That claim for additional conditions, however, was denied by the BWC. Briggs appealed that decision to the Madison County Court of Common Pleas.

{¶ 4} On June 25, 2013, a jury trial was held on the issue of Briggs' T4-7 syrinx only. At the close of Briggs' case-in-chief, appellees moved for a directed verdict, which the trial court denied. Following the presentation of appellees' evidence, the case was submitted to the jury. The jury found in favor of Briggs finding that the workplace incident substantially aggravated the pre-existing T4-7 syrinx.

{¶ 5} Subsequently, appellees filed a joint motion for Civ.R. 50(B) judgment notwithstanding the verdict because Briggs failed to present any evidence that her T4-7 syrinx "was either caused by the relevant incident or pre-existed the incident and was substantially aggravated by it." On October 17, 2013, the trial court granted appellees' motion for judgment notwithstanding the verdict and entered judgment in favor of appellees. Briggs now appeals, raising a single assignment of error for review.

{¶ 6} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT GRANTED THE DEFENDANT'S (SIC) MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.

{¶ 7} In her sole assignment of error, Briggs argues the trial court incorrectly construed her expert's testimony when it granted judgment notwithstanding the verdict. Briggs' argument revolves around the testimony of her expert witness, who testified: "[a]gain, without a pre-event MRI, I -- it is impossible to say for sure that the event caused the syrinx. However, again, it's my opinion that if it was not causative it was at least -- it aggravated or significantly aggravated the syrinx if it was there prior to the event." Because Briggs presented dual theories of recovery, i.e., the T4-7 was either caused by the workplace incident or substantially aggravated by the incident, she argues the trial court improperly concluded that the expert witness testimony she presented was insufficient to establish that her T4-7 syrinx pre-existed the workplace incident and was substantially aggravated by the incident. We find Briggs' argument is without merit.

{¶ 8} We review a trial court's decision on a motion for directed verdict or judgment notwithstanding the verdict de novo. *Citibank, N.A. v. Ebbing*, 12th Dist. Butler No. CA2012-

---

1. A syrinx is an abnormal accumulation of fluid in the spine or a "fluid filled cavity in the spinal cord." Because Briggs' syrinx is between the fourth and seventh thoracic vertebrae, we will refer to that condition as a T4-7 syrinx.

12-252, 2013-Ohio-4761, ¶ 52. A favorable ruling on either motion is not easily obtained. *Phipps v. Internatl. Paper Co.*, 12th Dist. Clinton No. CA2013-02-003, 2013-Ohio-3994, ¶ 10. The standard for granting a motion for judgment notwithstanding the verdict is the same as that for granting a motion for directed verdict. *Choate v. Tranet, Inc.*, 12th Dist. Warren No. CA2005-09-105, 2006-Ohio-4565, ¶ 48.

{¶ 9} That is, when considering either motion, the evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made. *Phipps* at ¶ 11; *Choate* at ¶ 48. If the court finds that reasonable minds could not differ as to any determinative issue, then the court must sustain the motion. *Ebbing* at ¶ 53. If, on the other hand, there is substantial competent evidence to support the nonmoving party, upon which reasonable minds might reach different conclusions, the motion must be denied. *Id.*

{¶ 10} "A workers' compensation claimant seeking the right to participate for an injury arising from an industrial accident must show by a preponderance of the evidence, medical or otherwise, the existence of a direct and proximate causal relationship between the accident and the injury." *Phipps* at ¶ 12; *Cook v. Mayfield*, 45 Ohio St.3d 200, 204 (1989). Injuries covered by workers' compensation do not include "condition[s] that pre-existed an injury unless [the] preexisting condition is substantially aggravated by the injury." R.C. 4123.01(C)(4); *Strickler v. Columbus*, 10th Dist. Franklin No. 13AP-464, 2014-Ohio-1380, ¶ 8. Pursuant to R.C. 4123.01:

> Such a substantial aggravation must be documented by objective diagnostic findings, objective clinical findings, or objective test results. Subjective complaints may be evidence of such a substantial aggravation. However, subjective complaints without objective diagnostic findings, objective clinical findings, or objective test results are insufficient to substantiate a substantial aggravation.

{¶ 11} In the present case, the jury found in favor of Briggs on the basis that her T4-7

- 4 -

syrinx was a pre-existing condition that was substantially aggravated by the workplace incident occurring on December 9, 2010. Although given the option, the jury did not find that the workplace incident caused the syrinx. Accordingly, during trial Briggs was required to present evidence that the condition, the T4-7 syrinx, existed prior to the date of injury, and the injury substantially aggravated the pre-existing condition. *See Strickler* at ¶ 8; R.C. 4123.01(C)(4). It is undisputed that Briggs was neither diagnosed with a T4-7 syrinx, nor given an MRI prior to the workplace incident. Rather, the first time that Briggs was diagnosed with a T4-7 syrinx was following the workplace incident.

{¶ 12} As noted by other appellate courts considering this issue, "[i]n cases where the pre-injury condition is asymptomatic, providing an initial reference point becomes difficult, especially where the pre-existing condition has never been diagnosed." *Lake v. Anne Grady Corp.*, 6th Dist. Lucas No. L-12-1330, 2013-Ohio-4740, ¶ 20. "Lack of pre-injury evidence, however, does not preclude a claimant from establishing the existence of a pre-existing condition." *Strickler* at ¶ 8; *Lake* at ¶ 20.

{¶ 13} For example, in *Brate v. Rolls-Royce Energy Sys.*, Inc., 5th Dist. Knox No. 12CA000001, 2012-Ohio-4577, the Fifth Appellate District reversed the trial court's grant of summary judgment to the employer on the claimant's claim for substantial aggravation of pre-existing osteoarthritis of the right knee. *Id.* at ¶ 39. In so doing, the court noted that there was no objective evidence of the claimant's osteoarthritis prior to his workplace incident, but found that the claimant's treating physician had testified that during the post-injury diagnostic arthroscopy, he had observed osteoarthritic changes that were of "advanced pathology," from which he concluded that the claimant suffered from osteoarthritis prior to his injury. *Id.* at ¶ 31. The court held that this testimony, along with expert testimony that the workplace incident worsened the claimant's osteoarthritis, was sufficient to overcome the employer's motion for summary judgment. *Id.* at ¶ 38.

{¶ 14} Similarly, like the treating physician in *Brate*, the treating physician in *Bohl v. Cassens Transp. Co.*, 3d Dist. Seneca No. 13-11-36, 2012-Ohio-2248, referred to post-injury evidence to explain his basis for concluding that the claimant's cervical degenerative disc disease pre-dated the claimant's injury. In analyzing whether claimant had produced sufficient evidence under R.C. 4123.01(C)(4) to overcome the employer's motion for a directed verdict, the court noted that claimant's doctor had testified that bone spurs seen on claimant's post-injury MRI and x-rays "took years to develop and were there before the January 2010 injury," and, accordingly, opined that claimant suffered from degenerative cervical disc disease. *Id.* at ¶ 25. The Third District Court of Appeals relied on this testimony, along with the physician's opinion that substantial aggravation had occurred and the declining results of range-of-motion tests, to conclude that the claimant had proven a substantial aggravation of a pre-existing condition. *Id.* at ¶ 32.

{¶ 15} However, unlike *Brate* and *Bohl*, the Tenth District Court of Appeals in *Strickler v. Columbus*, 10th Dist. Franklin No. 13AP-464, 2014-Ohio-1380, affirmed a trial court's decision to grant judgment in favor of an employer based on a similar situation to the case at bar. In *Strickler*, claimant was injured when she slipped on shell casings and cracked her right knee on the concrete floor while at the police firing range. *Id.* at ¶ 2. Thereafter, claimant filed a claim for compensation and benefits with the BWC. The BWC allowed the claim in part, but disallowed the claim with regard to the conditions of "right knee chondral fracture," "osteoarthritis right knee," and "substantial aggravation of pre-existing osteoarthritis right knee." *Id.* at ¶ 5.

{¶ 16} At trial, the parties disputed whether claimant had osteoarthritis in her right knee prior to the April 18, 2007 injury. *Id.* at ¶ 11. Prior to the injury, claimant had never experienced pain, instability, or stiffness in her right knee. *Id.* As a consequence, no medical professional had diagnosed claimant with arthritis of the right knee before April 18, 2007, and

no x-rays or MRI scans of claimant's right knee predated the injury. *Id.*

{¶ 17} In affirming the decision of the trial court granting judgment in favor of employer, the court noted that, claimant "did not provide any evidence akin to that introduced in *Brate* or *Bohl*." *Id.* at ¶ 13. In so doing, the court analyzed the testimony presented by claimant's treating physician who "testified repeatedly that [claimant's] post-fall symptoms resulted, in part, from the substantial aggravation of pre-existing osteoarthritis." *Id.* As such the court recognized that, "[i]mplicit in this testimony is [physician's] opinion that [claimant] had osteoarthritis in her right knee prior to her injury." *Id.* However, unlike the physicians in *Brate* and *Bohl*, the court explained that "claimant's physician never explained why he held this opinion." *Id.* In fact, the court further noted that the only evidence establishing a possible explanation came from the claimant herself who testified "that her May 11, 2007 MRI scan showed arthritis in her right knee and she 'was told * * * it just can't appear overnight, so I had to have it before [the April 18, 2007 fall].'" *Id.* As such, the court held that the trial court had an "objectively present" reason to disregard the testimony presented by claimant's physician because he "failed to explain the basis on which he arrived at his opinion that [claimant's] arthritis pre-existed her fall." *Id.* at ¶ 15.

{¶ 18} Based on our review of the evidence, we find that Briggs failed to present any evidence that her condition, the T4-7 syrinx, existed prior to the workplace incident. To show that her claim for the T4-7 syrinx was compensable, Briggs presented the testimony of Dr. Victoria Lawson. Dr. Lawson is a board-certified neurologist who treated Briggs both prior to and after the workplace incident.[2] Dr. Lawson testified that Briggs' T4-7 syrinx was either caused by the workplace incident, or was a substantial aggravation of a pre-existing T4-7

---

2. The record reflects that Briggs first saw Dr. Lawson in July of 2010. Dr. Lawson stated that Briggs complained of itching toes. Following a complete examination, Dr. Lawson testified that she was unable to diagnose Briggs with any underlying disorder.

syrinx. However, Dr. Lawson was unable to provide any testimony besides vague and speculative conclusions regarding Briggs' T4-7 syrinx. For example, Dr. Lawson testified:

> Q. Okay. Next question is, based upon a reasonable degree of medical probability, based upon your examination of [Briggs], your objective clinical tests, and the objective diagnostic testing, and the history given to you, can you give an opinion regarding the syrinx at T4 to T7?
>
> A. Again, without a pre-event MRI, I -- it is impossible to say for sure that the event caused the syrinx. However, again, it's my opinion that if it was not causative it was at least -- it aggravated or significantly aggravated the syrinx if it was there prior to the event.
>
> And that's based on exam findings that clearly changed; a clinical presentation that clearly changed; the nature of the injury, again, referring to forced version of the head and immediate symptoms thereafter.

In further elaborating on this point, Dr. Lawson testified:

> Q. What clinical presentation change do you find important?
>
> A. The most important was the new finding of sensory abnormalities on [the] exam, the subsequent finding of clear temperature and color changes in the arm, as well as edema that was noted on subsequent notes.
>
> * * *
>
> Q. Okay. Are there any other health conditions that possibly cause the same symptoms?
>
> A. Yes.
>
> Q. What?
>
> A. A reflex sympathetic dystrophy [RSD].
>
> Q. Does [Briggs] have that?
>
> A. Yes.
>
> Q. Okay. If RSD and syrinx have similar components to the pain complaints and their manifestations, how are you able to state to a reasonable degree of medical probability that the syrinx is new and different than the RSD?

> A.     Okay.  I know it's different because she's got clear radiologic evidence of the syrinx, again, in my opinion and the radiologist's opinion.
>
> My opinion that there is contribution from the syrinx comes from, No. 1, the nature of the injury.  This was a severe injury and it - - with a forced version of the head, that would be the right kind of traumatic event to cause a syrinx or to worsen a pre-existing syrinx.
>
> And the fact that she has not responded completely to injections supports contribution from the syrinx, in my mind.

Thus, although Dr. Lawson's testimony clearly reflects her opinion that Briggs currently has a T4-7 syrinx, that testimony does not support the jury's finding that Briggs had an existing syrinx prior to the workplace incident.

{¶ 19} The issue regarding whether the workplace incident either caused the syrinx or substantially aggravated a pre-existing syrinx was further elaborated on cross-examination where Dr. Lawson reiterated:

> Q.     And just to clarify your earlier testimony, I believe you stated that the only real way to confirm the existence of a C3-C4 protrusion or a syrinx would be an MRI; is that correct?
>
> A.     Yes.
>
> Q.     So you are not able to conclude within a reasonable degree of medical certainty that the C3-C4 disc protrusion or syrinx was caused by the workplace injury; is that correct?
>
> A.     I can neither confirm that it was caused nor confirm that it was not caused.

Finally, on re-direct, Dr. Lawson again testified:

> Again, my opinion is based on my experience with patients who have nerve disorders; the fact that the - - that the injury was consistent with, you know, the sort of trauma that would aggravate a syrinx if it was pre-existing or creative, if it was there; the fact that she has persistence of her pain despite, you know, using therapies that should help with [RSD].

{¶ 20} We find the trial court did not err in granting appellees' motion for judgment

notwithstanding the verdict. As previously noted, the jury did not find that the workplace incident caused Briggs' T4-7 syrinx. Rather, the jury found that the workplace injury substantially aggravated a pre-existing condition. In vacating the jury's verdict and entering judgment in favor of appellees, the trial court found that Briggs failed to present testimony that she had a pre-existing T4-7 syrinx.

{¶ 21} We agree with the trial court's decision. Although Briggs presented the testimony of Dr. Lawson who clearly testified that she believed Briggs' workplace incident could have aggravated a pre-existing T4-7 syrinx, no evidence was introduced in the record to show that the T4-7 syrinx existed prior to the injury. This evidence is crucial because, without any evidence to suggest that Briggs' T4-7 syrinx existed prior to the workplace incident, Briggs was unable to show that the T4-7 syrinx was substantially aggravated by the workplace incident pursuant to R.C. 4123.01(C)(4). Dr. Lawson's testimony suggests only a mere possibility of a causal connection. *Jefferson v. CareWorks of Ohio, Ltd.*, 10th Dist. Franklin No. 10AP-785, 2011-Ohio-1940, ¶ 17 ("when expert medical testimony is required in a case to establish a causal connection between the industrial injury and a subsequent physical condition, the proof must establish a probability and not a mere possibility of such causal connection"). Therefore, because the jury found that Briggs' substantially aggravated a pre-existing condition without sufficient evidence regarding preexistence of the condition, the trial court did not err when it granted appellees judgment notwithstanding the verdict. Briggs' sole assignment of error is overruled.

{¶ 22} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.