OPINION
{¶ 1} Plaintiff-appellant, Pamela Choate, acting pro se, appeals from a judgment of the Warren County Court of Common Pleas entered in favor of defendants-appellees, Tranet, Inc., and Tim Rudy, with respect to appellant's action for breach of an alleged oral contract.
 {¶ 2} In February 1998, appellant began working as a bookkeeper and office administrator at Tim Rudy Associates, which was owned by Tim Rudy. In January 1999, Rudy incorporated his company, and it became known as Tranet, Inc. Among other things, Tranet designs and builds "computer rooms" for its customers.
 {¶ 3} On August 29, 2001, appellant voluntarily resigned from Tranet. In her letter of resignation addressed to Rudy, appellant stated that "[t]he associations made during my employment at Tranet will truly be memorable for many years[,]" and that she "wish[ed] [Rudy] and Tranet continued success."
 {¶ 4} On August 15, 2002, appellant, acting pro se, filed a complaint for compensation of occupational injury and breach of a verbal contract against Tranet, Inc., Rudy, the Ohio Industrial Commission, and the Ohio Bureau of Workers' Compensation. In Count One of her complaint, appellant alleged that she was entitled to participate in the workers' compensation fund as a result of injuries she received from lifting heavy shipments during the course of her employment with Tranet.
 {¶ 5} In Count Two of her complaint, appellant alleged that Rudy breached an oral agreement he had made with her and several of Tranet's other salaried employees to pay them for the overtime hours they worked, in the form of a year-end bonus. Appellant alleged that Tranet and Rudy owed her $150,000, plus interest, for the overtime pay she was due. The trial court subsequently ordered that Counts One and Two of appellant's complaint were to be tried separately.
 {¶ 6} In September 2003, a trial was held on Count One of appellant's complaint. At the close of appellant's evidence, the trial court entered a directed verdict against appellant as to her claim for participation in the worker's compensation fund, on the basis of appellant's "failure to present expert testimony causally connecting her claimed injury to work."
 {¶ 7} On November 10, 2003, appellant brought a First Amended Complaint, adding two additional counts to her complaint, alleging that Tranet and Rudy had committed fraud against her ("Count Three"), and had engaged in a civil conspiracy against her ("Count Four"). On June 3, 2004, the trial court issued summary judgment against appellant and in favor of Tranet and Rudy with respect to Counts Three and Four of appellant's first amended complaint.
 {¶ 8} On July 11 and 12, 2005, a jury trial was held on the remaining claim in appellant's complaint, i.e., Count Two. At trial, appellant testified that Rudy had promised to pay her for the overtime hours she worked, in the form of a year-end bonus; however, after paying her one bonus of $5,000 in 1998, he failed to pay her the remaining amounts that he owed her. Appellant testified that Tranet and Rudy owed her approximately $200,000 in overtime pay.
 {¶ 9} Rudy testified that he never promised to pay appellant overtime, either in the form of a year-end bonus, or otherwise. He testified that he did not pay overtime to his salaried employees at Tranet, like appellant, but, instead, only paid bonuses to them on the basis of their performance. Rudy presented the testimony of two of his former employees, Robert Trent and Steve Sharp, who corroborated Rudy's assertions that any bonuses paid at Tranet were paid for performance, and not as compensation for overtime.
 {¶ 10} The case was submitted to the jury, who found in favor of Tranet and Rudy, and against appellant. Appellant moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial court overruled both motions, finding there was no basis for either.
 {¶ 11} Appellant now appeals, raising six assignments of error:
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "THE TRIAL COURT ERRED BY ALLOWING MISCONDUCT, FALSE MISREPRESENTATIONS, FRAUD, INFLAMMATORY ABUSIVE REMARKS, AND EGREGIOUS BEHAVIOR OF COUNSEL FOR DEFENDANTS-APPELLEES."
 {¶ 14} Appellant argues that the trial court committed reversible error by allowing appellees' counsel to make certain remarks during his opening statement and closing argument that were either misleading, false, inflammatory, or abusive. We disagree with this argument.
 {¶ 15} The purpose of an opening statement is to give the parties an opportunity to inform the jury, in a concise and orderly manner, about the nature of the case, the facts and issues involved, and what they expect the evidence to prove.Cincinnati Ins. Co. v. Maytag Co. (1989), 63 Ohio App.3d 144,148, citing Maggio v. Cleveland (1949), 151 Ohio St. 136, paragraph one of the syllabus. While the parties are afforded considerable latitude in making an opening statement, a litigant or his or her counsel is not permitted to make statements of law or fact that are obviously erroneous. Id. at 140-141; Ellis v.Ohio Turnpike Commission (App. 1955), 70 Ohio Law Abs. 438, 442. A trial court's rulings with respect to opening statements will not be reversed unless the trial court abuses its discretion.Sheets v. Norfolk S. Corp. (1996), 109 Ohio App.3d 278, 291.
 {¶ 16} Initially, the opening statement of appellees' counsel was erroneous in at least one respect. On several occasions in his opening statement, appellees' counsel failed to restrict himself to discussing what the evidence would show, and, instead, lapsed into arguing the merits of appellant's claim. Appellant did, in fact, raise an objection during appellees' counsel's opening statement (although she failed to specify the ground on which she was objecting) and the trial court sustained that objection on the basis that an opening statement should not contain argument. Later, in the opening statement of appellees' counsel, the trial court, acting sua sponte, reminded appellees' counsel not to raise arguments in his opening statement, and, instead, to restrict his opening remarks to a discussion of what the evidence would show.
 {¶ 17} Notably, appellant has not raised this issue in her assignment of error. Instead, she raises several minor problems with the opening statement of appellees' counsel, including that appellees' counsel referred to appellant's opening statement as "testimony," and that he referred to events that occurred in the year 2002, when it appears that he meant to say the year 2000. However, none of these minor misstatements or alleged misrepresentations warrants reversal.
 {¶ 18} Appellant also contends that appellees' counsel made misrepresentations in his opening statement regarding whether Rudy ever denied paying appellant a $5,000 bonus. However, Rudy's trial testimony revealed that while Rudy had denied paying appellant the $5,000 bonus for working overtime, he admitted to paying her a $5,000 bonus in 1998 on the basis of her performance that year. It was appropriate for appellees' counsel to alert the jury to this type of issue, and the determination as to which side was being truthful about the matter was a question for the jury to decide. Appellant's remaining contentions concerning her opponent's opening statement are of a similar nature. The alleged misrepresentations in appellees' counsel's opening statement do not qualify as the type of egregious misconduct or behavior that would warrant a reversal.
 {¶ 19} The same is true for appellant's contentions regarding the closing argument of appellees' counsel. A litigant or his or her counsel is afforded "great latitude" in making closing argument to the jury. Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph two of the syllabus. "The assessment of whether the permissible bounds of closing argument have been exceeded is, in the first instance, a discretionary function to be performed by the trial court." Id. at paragraph three of the syllabus. The trial court's "determination will not be reversed on appeal absent an abuse of discretion." Id.
 {¶ 20} Initially, appellant failed to object to any portion of the closing argument of appellees' counsel. Generally, any error that occurs in the trial court proceedings that is not objected to in a timely manner when the alleged error could have been corrected or avoided altogether, is deemed to have been waived for purposes of appeal. State v. ex rel Quatro Mining Co.v. Foreman, 79 Ohio St.3d 78, 81, 1997-Ohio-71.
 {¶ 21} Furthermore, while such errors may be recognized under the "plain error" doctrine, that doctrine is not favored in civil cases such as this one. Goldfuss v. Davidson,79 Ohio St.3d 116, syllabus, 1997-Ohio-401. As a general rule, the civil plain error doctrine "may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Id.
 {¶ 22} In this case, none of the alleged errors in the closing argument of appellee's counsel amounted to plain error under the circumstances of this case. For example, appellant argues that opposing counsel unfairly bolstered the credibility of one of his witnesses, Trent Boone, by telling the jury that Boone was one of the most "honest men you're ever going to meet." However, appellant opened the door to this remark by stating during the trial and her closing argument that she had not called Boone and Sharp to testify because these witnesses had been "tampered with," implying that they had been "coached" by appellees' counsel on what to say during their testimony.
 {¶ 23} Appellant also objects to a remark made by appellees' counsel in his closing argument, wherein he told the jury, "there are some people in the world that work for a living, there are some people in the world that scheme for a living. I don't have to tell you which one we're dealing with in this case." This remark was, indeed, harsh, but it was arguably tied to counsel's review of the evidence that had been presented to the jury. This evidence included the fact that appellant first attempted, unsuccessfully, to obtain unemployment compensation after she voluntarily resigned from Tranet, and then attempted, again unsuccessfully, to obtain worker's compensation, before suing Tranet and Rudy for the overtime that was allegedly owed to her. Because this remark was tied to the evidence and because there was no objection made to it, the remark does not constitute reversible error.
 {¶ 24} Appellant also raises an objection to a remark made by appellees' counsel concerning tort reform. At the end of his closing argument, appellees' counsel noted that the issue of tort reform had come up during voir dire. Appellees' counsel told the jury that tort reform "doesn't work if it's dictated out of Columbus or DC[, but instead, only works] when juries are reasonable, when juries consider the evidence, carefully weigh the evidence, listen to the instructions [given to them by the trial judge] * * * [and then] after listening to those instructions, [and] after evaluating the evidence, make a just and fair ruling."
 {¶ 25} Admittedly, we are somewhat puzzled as to why appellees' counsel raised the issue of tort reform during his closing argument. It appears that he may have done so in order to identify with at least one of the jurors on the panel who happened to be a doctor (this juror later became the jury's foreperson). While it may have been unwise and even improper for appellees' counsel to raise this issue in his concluding argument, these remarks did not amount to reversible error in the absence of a timely objection from appellant.
 {¶ 26} Appellant's first assignment of error is overruled.
 {¶ 27} Assignment of Error No. 2:
 {¶ 28} "THE TRIAL COURT ERRED WHEN IT ALLOWED DEFENDANTS-APPELLEES' WITNESS STEVE SHARP TO READ HIS NOTES OF PREVIOUS DEPOSITION TESTIMONY WHILE TESTIFYING ON THE WITNESS STAND FOR DEFENDANTS-APPELLEES."
 {¶ 29} Appellant argues that the testimony of Steve Sharp should have been stricken from the record because Sharp read the notes of his deposition testimony while testifying on the witness stand.
 {¶ 30} Prior to the trial on appellant's claim for breach of an oral contract, appellant moved to have Sharp's deposition suppressed because appellees had taken it without providing her with proper notice. After finding that Sharp's deposition had been taken without notice to appellant, the trial court ordered that Sharp's deposition "may be used at trial as a prior sworn statement only for the purpose of contradicting or impeaching [Sharp's] testimony[.]"
 {¶ 31} Appellees called Sharp as a witness at trial. Then, appellant cross-examined him. At no time during Sharp's testimony did appellant raise the objection she is raising now, i.e., that Sharp was reading from the notes of his deposition testimony. When it came time for appellant to present rebuttal testimony to appellees' case, appellant recalled herself to the stand. She began by addressing Sharp's testimony, stating, in pertinent part, as follows:
 {¶ 32} "Mr. Sharp also testified that [appellant] was frustrated for not getting her overtime bonus. Then he looked down at this notes, which he was not allowed to have at the witness stand, and —"
 {¶ 33} At that point, appellees' counsel objected, and the trial court sustained the objection, noting that "[t]here was no motion or otherwise, [and] there's no reason why he could not have his notes or if he used his notes. That's up to the jury to determine."
 {¶ 34} Appellant argues that the trial court was in a position from the bench to see that Sharp was reading from his notes when he was answering questions from appellees' counsel on direct examination. Appellant argues that Sharp's notes from the deposition were not furnished" to her, and "were not to be used by anyone at trial except for contradiction or impeachment." She asserts that the trial court should have admonished appellees' counsel, ordered Sharp's testimony stricken, and advised the jury to disregard Sharp's testimony. We disagree with this argument.
 {¶ 35} Evid. R. 103(A)(1) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * [i]n case the ruling is one admitting evidence, timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context[.]" (Emphasis added.)
 {¶ 36} Here, appellant never raised a timely objection at trial to Sharp's testimony, which, appellant alleges, was aided by his reliance on notes from a deposition that the trial court had ruled inadmissible at trial, except for limited purposes. By not raising this issue in a timely manner, there was no opportunity for the trial court to determine what Sharp was actually reading from, or what, if anything, Sharp's notes actually contained. Under these circumstances, appellant waived any objections she may have had to Sharp's testimony by failing to raise a timely objection, stating with specificity the grounds of her objection. See Evid.R. 103(A)(1).
 {¶ 37} Evid.R. 103(D) states that "[n]othing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." However, as we have already noted, plain error is to be recognized only in the rarest of instances, where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself."Goldfuss, 9 Ohio St.3d 116, syllabus.
 {¶ 38} The alleged error regarding Sharp's testimony is not such an instance. First, appellees' counsel never attempted to make substantive use of Sharp's deposition at trial. Second, assuming appellant's representations in this assignment of error to be correct, Sharp, at most, read from notes taken from that deposition in an apparent effort to refresh his memory of the events at issue. We see no plain error under the circumstances of this case in the trial court's decision to permit him to do so.
 {¶ 39} Appellant began working for appellees in 1998 and voluntarily resigned in August 2001. She brought her claim for breach of an oral contract in August 2002, and that claim was not tried until July 2005. The rules of evidence in this state allow witnesses to use a writing to refresh his or her memory for the purpose of testifying. See Evid. R. 612. If the trial "court in its discretion determines it is necessary in the interests of justice," the opposing party may request that the writing be produced at the hearing, so that he or she can inspect the writing and cross-examine the witness on it. Id.
 {¶ 40} In light of the considerable passage of time between the events at issue and the trial, appellees' witnesses, such as Sharp, were entitled to use notes to refresh their memory of events, even if those notes happened to have been taken from depositions that had been ruled inadmissible at trial, except for the limited purposes of impeachment. Appellant, upon timely request, would have been entitled to see those notes and cross-examine Sharp on them, if she chose. We see no plain error on the trial court's behalf in not ordering the jury to disregard Sharp's testimony under these circumstances.
 {¶ 41} Appellant's second assignment of error is overruled.
 {¶ 42} Assignment of Error No. 3:
 {¶ 43} "THE TRIAL COURT ERRED WHEN IT FAILED TO MAINTAIN CONTROL OF THE TRIAL."
 {¶ 44} Assignment of Error No. 4:
 {¶ 45} "THE TRIAL COURT ERRED WHEN IT OVERRULED PLAINTIFF-APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT (JNOV) OR A NEW TRIAL."
 {¶ 46} Because appellant's third and fourth assignments of error present similar issues, we shall address them jointly.
 {¶ 47} First, appellant argues that the trial court erred when it overruled her motion for judgment notwithstanding the verdict. We disagree with this argument.
 {¶ 48} The standard for granting a motion for judgment notwithstanding the verdict is the same as that for granting a motion for a directed verdict. Texler v. D.O. Summers Cleaners Shirt Laundry Co., 81 Ohio St.3d 677, 679, 1998-Ohio-602. When deciding a motion for a directed verdict, the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, must decide whether as to any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to the nonmoving party. Civ.R. 50(A)(4). If the court finds that reasonable minds could not differ as to any determinative issue in the case, then the court must sustain the motion. Id. If the court finds that reasonable minds could differ as to any determinative issue in the case, the court must overrule the motion. See id.
 {¶ 49} The trial court need not consider either the weight of the evidence nor the credibility of the witnesses in disposing of a motion for a directed verdict; "[t]hus, `if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied.'" (Citations omitted.) Texler, 81 Ohio St.3d at 679.
 {¶ 50} When the evidence is construed most strongly in favor of the parties against whom the motion is made, which, in this case, are the appellees, it is apparent that reasonable minds could reach different conclusions on the determinative issues presented in this case. Rudy denied that any oral contract existed between appellees and appellant that required appellees to pay appellant overtime in the form of year-end bonus. Consequently, the trial court was obligated to overrule appellant's motion for judgment notwithstanding the verdict.
 {¶ 51} Appellant also argues that the trial court erred when it overruled her motion for a new trial after the jury had returned a verdict against her. We disagree with this argument.
 {¶ 52} Civ.R. 59(A) provides that a new trial may be granted to any party on any issue in a case on any of the nine enumerated grounds listed therein, or for "good cause shown." The decision to grant or deny a new trial rests within the trial court's sound discretion, and the court's decision will not be reversed unless the decision constitutes an abuse of discretion, i.e., the decision is unreasonable, arbitrary, or unconscionable. Kaffemanv. Maclin, 150 Ohio App.3d 403, 406, 2002-Ohio-6479.
 {¶ 53} Appellant raises several arguments in her third and fourth assignments of error as to why the trial court should have granted her motion for a new trial, including her contention that the trial court failed "to maintain control of the trial." She also reiterates several of the arguments she raised in her first two assignments of error, including that appellees' counsel mislead the jury and misrepresented the facts in the case during his opening statement and closing argument.
 {¶ 54} As to the arguments that appellant has already raised in her first two assignments of error, we reject them, again, for the same reasons stated in our response to those assignments of error. As to appellant's claim that the trial court allowed one of appellees' witnesses, Tim Rudy, "to speak when there was no question before him on many occasions and ramble on about [irrelevant] matters," we note that appellant failed to raise a timely objection to the portions of Rudy's testimony of which she now complains. Therefore, appellant has waived any objections she may have had to Rudy's testimony. See Evid.R. 103(A)(1).
 {¶ 55} Finally, notwithstanding appellant's contention to the contrary, a review of the entire record, including the transcript of the trial on appellant's claim for breach of an oral contract, shows that the trial court did a commendable job of maintaining control of the proceedings at all times.
 {¶ 56} Appellant's third and fourth assignments of error are overruled.
 {¶ 57} Assignment of Error No. 5:
 {¶ 58} "THE TRIAL COURT ERRED WHEN IT ALLOWED COUNSEL FOR DEFENDANTS-APPELLEES TO PERPETRATE FRAUD UPON THE PLAINTIFF-APPELLANT AND THE COURT."
 {¶ 59} Appellant argues that appellees' counsel perpetrated a fraud upon her and the trial court by misrepresenting the facts of the case. We disagree with this argument.
 {¶ 60} One commentator has suggested that the concept of "fraud upon the court" should be defined to embrace only "that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." See Coulson v. Coulson (1983), 5 Ohio St.3d 12,15. However, it is generally agreed that "[a]ny fraud connected with the presentation of a case to a court is a fraud upon the court, in a broad sense." Id., citing 11 Wright Miller, Federal Practice and Procedure (1973) 253, Section 2870.
 {¶ 61} In this case, the only alleged fraud cited by appellant in support of her argument under this assignment of error is that appellees' counsel misrepresented "facts in the case." Appellant does not specify what facts appellee's counsel misrepresented that she claims constitute a fraud upon her and the trial court. Presumably, she is referring to the same ones she cited in support of her first assignment of error, namely, the statements appellees' counsel made in his opening statement and closing argument.
 {¶ 62} However, for the same reasons we overruled appellant's first assignment of error, we conclude that appellant has failed to establish that appellees' counsel committed a fraud upon her or the trial court by misrepresenting the facts of this case.
 {¶ 63} Appellant's fifth assignment of error is overruled.
 {¶ 64} Assignment of Error No. 6:
 {¶ 65} "THE TRIAL COURT ERRED WHEN IT ALLOWED A VERDICT TO STAND WITH INSUFFICIENT EVIDENCE TO SUPPORT THE VERDICT."
 {¶ 66} Appellant argues that the jury's verdict finding in favor of appellees with respect to her claim for breach of an oral contract was against the manifest weight of the evidence. We disagree with this argument.
 {¶ 67} A contract is an "agreement or obligation, whether verbal or written, whereby one party becomes bound to another to pay a sum of money or to perform or omit to do a certain act."Terex Corp. v. Grim Welding Co. (1989), 58 Ohio App.3d 80, 82. "A contract is a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes a duty. [Citation omitted.] In other words, an express contract connotes an exchange of promises where the parties have communicated in some manner the terms to which they agree to be bound. [Citation omitted.] In order to declare the existence of a contract, the parties to the contract must consent to its terms, there must be a meeting of the minds of both parties, and the contract must be definite and certain. [Citations omitted.]" McSweeney v. Jackson (1996),117 Ohio App.3d 623, 631.
 {¶ 68} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. In determining whether a judgment is against the manifest weight of the evidence, a court of appeals must "be guided by a presumption that the findings of the trier-of-fact were indeed correct." Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 79-80. The rationale for giving such deference to the findings of the trial judge or jury is that they are "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80.
 {¶ 69} "[W]here the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court." Myers v. Garson, 66 Ohio St. 3d 610,614, 1993-Ohio-9, citing Seasons Coal Co., 10 Ohio St.3d at 80, and Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167.
 {¶ 70} In this case, appellant testified that she and Rudy entered into a verbal agreement wherein Rudy agreed to pay her for the overtime hours she worked in the form of a year-end bonus. She also testified that Rudy made a similar agreement with Tranet's other salaried employees. Rudy denied making such an agreement with appellant or any of his other employees. He testified that he only paid bonuses on the basis of performance.
 {¶ 71} The jury was in the best position to view appellant, Rudy, and the other witnesses who testified; to observe their demeanor, gestures and voice inflections; and to use those observations in weighing the credibility of the testimony of the witnesses. Myers, 66 Ohio St. 3d at 615, citing Seasons CoalCo., 10 Ohio St.3d at 80. It is apparent from their verdict that the jury chose to believe Rudy and disbelieve appellant. A review of the evidence demonstrates that their decision to do so was not against the manifest weight of the evidence.
 {¶ 72} Although appellant testified that Rudy had made similar oral agreements with other salaried employees at Tranet, including Trent Boone and Steve Sharp, appellant was unable to produce any employee to corroborate her testimony. On the other hand, Rudy presented the testimony of both Boone and Sharp, who denied that any such agreement existed. Both Boone and Sharp testified that bonuses were paid at Tranet only for performance, and not as overtime.
 {¶ 73} Furthermore, appellant's claim that she was owed $200,000 in overtime was inherently implausible under the facts of this case.[1] The evidence showed that appellant earned approximately $48,000 annually at Tranet. Rounding off this figure to $50,000, this means she would have made, at most, $175,000 in base salary for the three and one-half years she worked at Tranet. Yet appellant was claiming that she was owed approximately $200,000 in "straight" overtime pay for that same three and one-half year period.
 {¶ 74} Additionally, the evidence showed that despite her claim that she was owed that amount, appellant did very little, if anything, to collect the claimed overtime pay she was owed. Appellant testified that she made three or four "verbal demands" from Rudy for payment. However, when appellant left Tranet's employ, she did nothing to remind Rudy of the overtime she was owed, and, instead, sent him a letter of resignation stating that her experience at the company had been "memorable" and wishing him and Tranet "continued success."
 {¶ 75} Finally, appellant did not file her complaint regarding the unpaid overtime until her efforts to obtain unemployment compensation and workers' compensation benefits were unsuccessful. The evidence in this case weighed heavily against appellant, and heavily in favor of appellees.
 {¶ 76} Appellant's sixth assignment of error is overruled.
 {¶ 77} The trial court's judgment is affirmed.
Powell, P.J., and Walsh, J., concur.
[1] Appellant had claimed in her complaint that she was owed $150,000 in overtime. She failed to offer any convincing explanation as to how the amount she was owed increased to $200,000.