[Cite as *Clarkwestern Dietrich Bldg. Sys. L.L.C. v. Certified Steel Stud Assn., Inc.*, 2017-Ohio-2713.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

CLARKWESTERN DIETRICH BUILDING     :
SYSTEMS, LLC d.b.a. CLARKDIETRICH,

                                   :        CASE NO. CA2016-06-113

       Plaintiff-Appellee,

                                   :        O P I N I O N
    - vs -                                                  5/8/2017

                                   :

CERTIFIED STEEL STUD ASSOCIATION,
INC., et al,                               :

       Defendants-Appellants.             :

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2013-10-2089

Frost Brown Todd LLC, Matthew C. Blickensderfer, Stephen R. Hernick, 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202 and Cohen & Grigsby, P.C., Anthony Cillo, Barbara Scheib, Fridrikh V. Shrayber, 625 Liberty Avenue, Pittsburgh, PA 15222-3152, for plaintiff-appellee

Faruki Ireland & Cox PLL, D. Jeffrey Ireland, Stephen A. Weigand, Jason W. Palmer, 201 East Fifth Street, Suite 1420, Cincinnati, Ohio 45202, for defendant-appellant, Certified Steel Stud Association, Inc.

**PIPER, J.**

{¶ 1} Defendant-appellant, Certified Steel Stud Association, Inc., ("the Association") appeals a decision of the Butler County Court of Common Pleas denying its motion for summary judgment and denying its request for judgment notwithstanding a verdict, which was rendered in favor of plaintiff-appellee, Clarkwestern Dietrich Building Systems LLC, DBA

ClarkDietrich.

{¶ 2}   The Association was formed in 2012 by manufacturers in the business of nonstructural steel framing.  These products provide framing for nonstructural walls, those that do not support the weight of the building, and must comply with the standards set forth by the International Building Code ("IBC").  One such compliance standard requires builders to use noncombustible products in multi-story applications.  To make the steel products noncombustible and to prevent corrosion, manufacturers use a method of coating the steel in a zinc-based coating called G40.

{¶ 3}   ClarkDietrich, which is headquartered in West Chester, Ohio, is in the business of selling steel framing products, accessories, and related services, and also manufactures coatings.  ClarkDietrich began producing an "equivalent" coating to G40, called EQ or G40EQ.  ClarkDietrich's development and use of G40EQ allowed it to manufacture its products at a lower cost, and some competitors reduced prices on the traditional G40-coated products to compete with ClarkDietrich's new G40EQ product.  The G40EQ coating is not listed in the IBC's table of coatings.

{¶ 4}   The Association released a publication entitled "CSSA Opinion: EQ Coatings Are Not Recognized By The Code," which included a byline of "Substituting G40e Presents Potential Liability for Contractors On Jobs."[1]  Within this publication, the Association made statements that (1) ClarkDietrich's G40EQ product did not comply with IBC standards, (2) the only acceptable coatings are those listed in the IBC tables, (3) ClarkDietrich is in the habit of substituting its products on projects that specify use of G40 coatings without informing the customer, (4) most project specifications require the use of G40 coatings, (5) contractors who use G40EQ are unknowingly subjecting themselves to liability, (6) the G40EQ coating is "paint," (7) the G40EQ-coated products are inferior to G40-coated products, (8) testing of

---

1. The Association referred to G40EQ products as G40e.

G40EQ products is less rigorous than for G40 products, and (9) G40EQ products cannot withstand intensive corrosive environments, such as buildings along the coastline.

{¶ 5} This publication was disseminated by the Association to 9,560 customers and others involved in the nonstructural steel framing industry. After the publication was distributed, ClarkDietrich lost projects and millions of dollars in revenue.

{¶ 6} ClarkDietrich sued the Association, as well as later-dismissed defendants, for violation of the Ohio Deceptive Trade Practices Act and unfair competition, defamation, disparagement, and civil conspiracy. The parties moved for summary judgment, and the Association argued that its publication was an opinion protected under the First Amendment, rather than actionable factual statements. The trial court denied the Association's motion for summary judgment on most issues, except for a limited judgment that the Association's statement that ClarkDietrich's products were "inferior" was an unactionable opinion.

{¶ 7} The trial court also granted summary judgment in favor the Association in a separate action filed by ClarkDietrich in which it alleged that the Association engaged in activities that violated the Valentine Act, Ohio's anti-trust statute. ClarkDietrich appealed that decision to this court, and we affirmed. *Clarkwestern Dietrich Bldg. Sys., LLC v. Certified Steel Stud Assn.*, 12th Dist. Butler No. CA2016-05-098, 2017-Ohio-1091.

{¶ 8} The remaining matters proceeded to an extensive trial that spanned nine weeks, after which the jury found in favor of ClarkDietrich, and awarded it $49 million, $43 million of which was apportioned to the Association. The trial court entered judgment based on the jury's verdict, and the Association filed a motion for judgment notwithstanding the verdict, or in the alternative, a motion for a new trial. The trial court denied the motion. The Association now appeals the trial court's decisions, raising the following assignments of error.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE COURT ERRED IN DENYING CSSA'S MOTION FOR SUMMARY

JUDGMENT.

{¶ 11} The Association argues in its first assignment of error that the trial court erred by not granting its motion for summary judgment because the publication contained opinion statements, rather than fact.

{¶ 12} Generally, any error in denying a summary judgment motion is rendered moot or harmless if the motion is denied due to the existence of genuine issues of material fact and a subsequent trial results in a verdict in favor of the nonmoving party. *South v. Browning*, 12th Dist. Warren No. CA2012-09-088, 2013-Ohio-1491, ¶ 27. However, an error in the denial of a summary judgment motion that presents a purely legal question is not rendered harmless by a subsequent trial on the merits. *Capella III LLC v. Wilcox*, 190 Ohio App.3d 133, 2010-Ohio-4746 (10th Dist.).

{¶ 13} When the alleged error in the denial of summary judgment is based purely on a question of law that must be answered without regard to issues of fact, the denial of summary judgment is reviewable*. Promotion Co., Inc./Special Events Div. v. Sweeney*, 150 Ohio App.3d 471, 2002-Ohio-6711, ¶ 15 (7th Dist.). Whether a statement is opinion or fact is a matter of law. *Coyne v. Stapleton*, 12th Dist. Clermont No. CA2006-10-080, 2007-Ohio-6170. As such, we will address the Association's assignment of error in which it claims that the trial court erred by determining that the publication contained factual statements, rather than opinion*.*

{¶ 14} This court's review of a trial court's ruling on a summary judgment motion is de novo. *Lindsay P. v. Towne Properties Asset Mgt. Co.*, 12th Dist. Butler No. CA2012-11-215, 2013-Ohio-4124, ¶ 16. Civ.R.56 sets forth the summary judgment standard and requires that there be no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion which is adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No.

CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

{¶ 15} The nonmoving party "may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996). A dispute of fact can be considered "material" if it affects the outcome of the litigation. *Myers v. Jamar Enterprises*, 12th Dist. Clermont No. CA2001-06-056, 2001 Ohio App. LEXIS 5477, *2 (Dec. 10, 2001). A dispute of fact can be considered "genuine" if it is supported by substantial evidence that exceeds the allegations in the complaint. *Id.*

{¶ 16} To determine whether a statement is fact or opinion, Ohio courts employ a totality of the circumstances test. *Condit v. Clermont Cty. Review*, 110 Ohio App.3d 755 (12th Dist.1996). Courts should consider "the specific language used, whether the statement is verifiable, the general context of the statement, and finally, the broader context in which the statement appeared." *Vail v. The Plain Dealer Publishing Co.*, 72 Ohio St.3d 279, 282 (1995). This is not a "bright-line" test, rather the standard is fluid and the facts of each case must be analyzed in the context of the general test. *Condit.* A key consideration is whether the language "lacks precise meaning and would be understood by the ordinary reader for just what it is – one person's attempt to persuade public opinion." *Vail* at 282-83. Language that is loosely definable or has variously interpretable meanings will not ordinarily support an action for defamation. *Wampler v. Higgins*, 93 Ohio St. 3d 111, 129 (2001). The integral question is whether the alleged defamatory statement is sufficiently factual to be susceptible of being proved true or false. *Bross v. Smith*, 80 Ohio App.3d 246 (12th Dist.1992).

{¶ 17} Commentary that is apparently based on actual facts and points out implications, rather than making a "personal prediction or hyperbolic characterization," may

leave the impression in the mind of a reasonable person that such statements speak to the truth of the matter, not merely the author's opinion. *Church of Scientology Internatl. v. Eli Lilly & Co.*, 778 F.Supp. 661, 668 (S.D.N.Y.1991). However, "simply couching a statement – 'Jones is a liar' – in terms of opinion – 'In my opinion Jones is a liar' – does not dispel the factual implications contained in the statement." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695 (1990), paragraph one of the syllabus.

{¶ 18} After reviewing the record, we find that the trial court did not err in finding that the statements made by the Association were actionable as fact, rather than protected opinions. The statements regarding whether the G40EQ products complied with IBC standards, whether the only acceptable coatings are those listed in the IBC tables, whether ClarkDietrich is in the habit of substituting its products on projects that specify use of G40 coatings without informing the customer, whether most project specifications require the use of G40 coatings, whether contractors who use G40EQ are unknowingly subjecting themselves to liability, whether G40EQ coating is "paint", whether the testing of G40EQ products is less rigorous than for G40 products, and whether G40EQ products cannot withstand intensive corrosive environments are all verifiable and can be proved as either true or false.

{¶ 19} In addition to being verifiable, we also find that these statements are precise and do not lack meaning in a way that would cause the reader to understand the statements as mere opinions. The specific language utilized in the Association's publication does not have interpretable meanings, as the message conveyed was that G40EQ products were not compliant with IBC requirements, were not held to the same standard as G40 products, and that ClarkDietrich was surreptitiously substituting products without customer knowledge when such jobs specifically called for the use of G40 materials. A reasonable reader cannot interpret these, and the other statements made in the publication, to mean anything other

than establishing the perils of using G40EQ products as compared to using G40 products.

{¶ 20}   The Association claims that the statements in its publication are opinion, given that the IBC requirements are open to interpretation.   However, and even if the IBC requirements for coating specifications could be interpreted in different ways by the parties, the statements could still be verified as either true or not-true based on either or both interpretations of the IBC requirements.   The way in which the Association worded the publication did not predicate the statements contained therein on any one interpretation of the code, but rather, publicized its statements as being true based on *any* reading of the IBC requirements.   As such, the publication's readers would understand that the Association was presenting facts as a clear implication and warning regarding the perilous use of G40EQ, rather than trying to persuade customers to believe in an interpretation of the IBC code advocated by the Association.

{¶ 21}   The publication's context does not purport to express the Association's opinion, despite the title of the piece as "CSSA Opinion."   Instead, the Association's statements within the context of the publication demonstrate that such statements are given as fact.   The entire publication is full of proof statements, such as "G40e is a misnomer; because equivalent metallic coatings are listed in Table 1 of ASTM A1003," and that "equivalency to G40 has only been defined by the manufacturers promoting their own G40e coatings."   As with the other verifiable statements within the publication, these statements were utilized to establish in context of the entire publication that G40EQ products are ineffectual.

{¶ 22}   However, the statements used by the Association did not require the reader to understand or utilize any one specific interpretation of the IBC.   Instead, the statements were not offered by the Association in support of using its preferred interpretation of the IBC where the statements were meant to establish *in fact* that the G40EQ products are unacceptable

substitutes for G40 products regardless of the interpretation used.

{¶ 23} While one, or possibly two, of the statements made by the Association are specific to whether G40EQ complies with the IBC standards, the rest of the statements did not hinge upon compliance. For example, the other statements included express assertions that Clark Dietrich engaged in improper or dishonest conduct, such as switching the products without informing customers, or that customers were exposing themselves to liability through use of the product. As such, and based on the totality of the circumstances, the possibility of the IBC regulations being open to interpretation would not defeat the finding that the Association's publication was predicated on fact, rather than opinion.

{¶ 24} After reviewing the record, we find that (1) the specific language used within the Association's publication indicates the use of fact rather than opinion. The statements are (2) verifiable given that they are true or not, regardless of the interpretation of the IBC used regarding compliance. The (3) general context of the statements, as stated within the Association's publication to customers of nonstructural steel framing products, indicates the use of factual statements being made by the Association to customers. Finally, the (4) broader context in which the statement appeared, the Association's warning to customers specific to the use of G40EQ products, also indicates the use of factual statements.[2] The totality of these circumstances, therefore, indicates that the publication included factual statements rather than protected opinion. As such, the trial court did not err in denying the Association's motion for summary judgment, and its first assignment of error is overruled.

{¶ 25} Assignment of Error No. 2:

{¶ 26} THE COURT ERRED IN DENYING CSSA'S MOTION FOR A JUDGMENT

---

2. The Association also suggests that the trial court erred by not awarding summary judgment because the meaning of IBC code requirements is a matter of law. However, generally speaking, once language in a writing is deemed ambiguous by the court, the matter of determining the meaning or interpretation is an issue of fact. *Amstutz v. Prudential Ins. Co.*, 136 Ohio St. 404, 408 (1940). *See also J & M Turner v. Applied Bolting Tech. Prods.*, E.D.Pa. Nos. 95-2179 and 96-5819, 1997 U.S. Dist. LEXIS 1835, *12 (Feb. 18, 1997) ("as a general rule, the factfinder interprets a writing's ambiguous provisions").

NOTWITHSTANDING THE VERDICT AND/OR FOR A NEW TRIAL.

{¶ 27}  The Association argues in its second assignment of error that the trial court should have granted its motion for a judgment notwithstanding the verdict or its motion for a new trial.[3]

{¶ 28}  We review a trial court's decision on a motion for directed verdict or judgment notwithstanding the verdict de novo.  *Briggs v. Franklin Pre-Release Ctr.*, 12th Dist. Madison No. CA2013-10-035, 2014-Ohio-2477.  A favorable ruling on either motion is not easily obtained.  *Phipps v. Internatl. Paper Co.*, 12th Dist. Clinton No. CA2013-02-003, 2013-Ohio-3994, ¶ 10.  The standard for granting a motion for judgment notwithstanding the verdict is the same as that for granting a motion for directed verdict.  *Choate v. Tranet, Inc.*, 12th Dist. Warren No. CA2005-09-105, 2006-Ohio-4565, ¶ 48.  That is, when considering either motion, the evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made.  *Phipps* at ¶ 11.  If the court finds that reasonable minds could not differ as to any determinative issue, then the court must sustain the motion.  *Id.*  If, on the other hand, there is substantial competent evidence to support the nonmoving party, upon which reasonable minds might reach different conclusions, the motion must be denied.  *Id.*

{¶ 29}  The Association first claims that the trial court should have granted its motion for a judgment notwithstanding the verdict or a new trial because the court erred in denying it the ability to provide expert testimony regarding whether G40EQ products complied with IBC standards by virtue of the trial court's rulings on motions in limine before the trial started.

{¶ 30}  It is incumbent upon a party who has been temporarily restricted from

---

3. The Association's first reason the trial court erred in not granting JNOV or a new trial is the same as those arguments raised in the first assignment of error specific to the trial court's ruling that the statements were fact. For the reasons stated in the first assignment of error, the trial court did not err in denying the motion for JNOV and a new trial.

introducing evidence because of a motion in limine to seek the introduction of that evidence by proffer or otherwise at trial to enable the trial court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal. *Garrett v. Sandusky*, 68 Ohio St.3d 139, 141 (1994). Failing to preserve the claimed error by objection or proffer negates an appellate court's duty to review the issue. *Barker v. Glen Meadows Nursing Home*, 12th Dist. Butler No. CA2008-06-145, 2009-Ohio-2626.

{¶ 31} The Association did not proffer the expert testimony it hoped to offer, nor did it object at the time the expert's testimony would have been given if not for the motion in limine. Thus, the Association failed to properly preserve for review the evidentiary issues raised in its motions in limine and has waived its right to argue those issues on appeal.

{¶ 32} The Association denies it has failed to preserve the issue because it felt its objection via the motions in limine were "clear" and that the law does not require it to "belabor the point further." Even if we were to determine that the Association properly lodged an objection to not being able to offer expert testimony, we find that the trial court did not abuse its discretion when determining the proper testimony of the expert witnesses.

{¶ 33} According to Evid.R. 704, "testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Ultimate-issue testimony is admissible when the scientific facts are beyond the experience, knowledge, or comprehension of the jury. *Shepherd v. Midland Mut. Life Ins. Co.*, 152 Ohio St. 6 (1949). The admission or exclusion of evidence, including ultimate-issue testimony, is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon a showing of an abuse of that discretion. *Shoemake v. Hay*, 12th Dist. Clermont No. CA2002-06-048, 2003-Ohio-2782. "The term abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Id.* at ¶ 9.

{¶ 34} The Association asserts that the trial court should have granted a new trial because the trial court's ruling barred the Association's expert witness from interpreting the IBC while allowing ClarkDietrich's expert to offer testimony on the ultimate issue of whether the G40EQ products complied with IBC specifications. Although some of the statements in the Association's publication addressed compliance, the majority of others did not. For example, whether ClarkDietrich surreptitiously replaced G40 products with G40EQ products, did not involve code interpretation. Nor did the Association's claim that testing for G40EQ products was less rigorous. Moreover, the parties asked the jury to determine whether the Association defamed ClarkDietrich though the *entire publication*, but did not ask the jury to specifically determine separately whether G40EQ products complied with the IBC requirements.

{¶ 35} The record indicates that the parties declined to ask the jury a specific question regarding compliance as part of rendering its verdict, and there was no such interrogatory submitted on the subject. Instead, the interrogatories asked the jury to determine *as a whole* whether the Association's publication (1) "contained a false or a misleading statement of fact in a commercial advertisement or promotion about the nature or quality of Plaintiff's nonstructural steel framing products," (2) whether the publication was "false," and (3) whether the Association made a "false and disparaging statement of fact about Plaintiff's products by publishing" the publication.

{¶ 36} As such, there is no indication in the record that the jury's decision was predicated on the lack of expert testimony from the Association that G40EQ products do not comply with IBC requirements. This is especially true where the record does indicate that the jury heard evidence and testimony from both parties' fact witnesses regarding compliance issues.

{¶ 37} Despite the trial court's ruling that the jury was not to hear expert testimony

regarding G40EQ's specific compliance with IBC standards, multiple fact witnesses on both sides testified to IBC standards, how such are created, and whether ClarkDietrich's EQ products appeared on the tables listed in association with the IBC code. Additionally, other lay witnesses were permitted to testify for both sides regarding what constituted IBC compliant coatings.

{¶ 38} For example, James DesLaurier, the author of the Association's publication, testified that the only acceptable coatings are those listed on Table 1 – which does not include EQ products. "When we wrote the article, the only acceptable metallic coatings were the seven that were included on Table 1 * * *. There are no definitions of what equivalent is * * * and only a handful of manufacturers were the ones that were promoting these coatings."

{¶ 39} The jury heard several weeks of testimony regarding the EQ coatings, and had ample testimony and evidence before it to determine whether such coatings were complaint with the IBC. While there is no doubt that this issue was an important point at trial, we reiterate that the jury was not asked to determine whether the EQ coatings were code compliant, and were never asked via interrogatories which of the statements made within the publication were determinative of its verdict. As such, there is no indication in the record that the trial court abused its discretion regarding expert testimony.

{¶ 40} After reviewing the record, the trial court properly denied the Association's motion for judgment notwithstanding the verdict and a new trial because there was no error in the evidentiary decisions made by the trial court. As such, the Association's second assignment of error is overruled.

{¶ 41} Judgment affirmed.

HENDRICKSON, P.J., and RINGLAND, J., concur.