[Cite as *Evans v. Gardner*, 2023-Ohio-558.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| CATHERINE EVANS, RECEIVER, ON BEHALF OF CERTIFIED STEEL STUD ASSOCIATION, INC., | : | |
| | : | CASE NOS. CA2022-07-070 |
| | | CA2022-07-071 |
| Appellee, | : | |
| | | O P I N I O N |
| | : | 2/27/2023 |
| - vs - | : | |
| | : | |
| WILLIAM A. GARDNER, et al., | : | |
| Appellant. | | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV 2018 020 442


Millikin & Fitton Law Firm, and Steven A. Tooman; Helmer, Martins, Tate & Garrett Co., LPA, and James B. Helmer, Jr., B. Nathaniel Garrett, James A. Tate, and Paul B. Martins, for appellee.

Taft Stettinius & Hollister LLP, and Daniel P. Warncke and Spencer S. Cowan; Fox Rothschild LLP, and Jeffrey M. Pollock and Robert J. Rohrberger, for appellant.


**HENDRICKSON, J.**

{¶1} Defendant, William A. Gardner, III, and nonparty Ware Industries, Inc. appeal from the order of the Butler County Court of Common Pleas that directs Gardner to produce in discovery an attorney-client communication that he says is in Ware's possession. For the reasons discussed below, we conclude that the trial court did not err by ordering Gardner to produce the communication. We accordingly affirm the trial court's order.

## I. Factual and Procedural Background

{¶2} This case arises out of litigation involving competitors in the steel stud framing industry. In 2013, ClarkDietrich (Clarkwestern Dietrich Building Systems, L.L.C.) filed a defamation action against Certified Steel Stud Association, Inc., a nonprofit trade association, and its members companies, alleging that the association made defamatory statements about the quality of ClarkDietrich's products in a trade publication that it published. In 2015, the case went to trial, and during the trial, ClarkDietrich settled with each of the member companies. But the association refused to settle. Just before closing arguments, ClarkDietrich offered to dismiss its claims against the association, with prejudice—a walk-away, no-cost settlement offer. The association's board of directors voted to reject the offer. ClarkDietrich moved to dismiss the case anyway. But the association dug in its heels and opposed dismissal. The trial court denied the motion to dismiss. A unanimous jury found for ClarkDietrich, and a $43 million judgment was entered against the association.[1] Because the association could not pay the judgment, ClarkDietrich moved the trial court to appoint a receiver on behalf of the association to pursue potential breach-of-fiduciary-duty claims against its directors and obtain funds to satisfy the judgment. The trial court agreed.[2]

{¶3} In 2018, the Receiver filed an action against the association's directors.[3] The receivership action claimed that the directors breached their fiduciary duties by mishandling the defamation action and rejecting multiple good opportunities to settle. The complaint

---

1. We affirmed that judgment in *Clarkwestern Dietrich Bldg. Sys., L.L.C. v. Certified Steel Stud Assn., Inc.*, 12th Dist. Butler No. CA2016-06-113, 2017-Ohio-2713.

2. We affirmed the receivership order in *Clarkwestern Dietrich Bldg. Sys., L.L.C. v. Certified Steel Stud Assn.*, 12th Dist. Butler, 2017-Ohio-8129, 98 N.E.3d 860.

3. John J. Reister was originally appointed as receiver. Catherine Evans was later substituted.

alleged that the directors were not acting in the association's best interests when they voted to reject the offer but were instead acting in the best interests of their respective companies. The association's board of directors was comprised of a designated employee from each member company. Ware Industries was one of the member companies, and William Gardner, its president and CEO, was the chairman of the association's board. Gardner initially argued that his actions were protected from liability by the litigation privilege doctrine and moved for judgment on the pleadings. The Ohio Supreme Court held that the litigation privilege doctrine was inapplicable, though, and the receivership action proceeded. *See Reister v. Gardner*, 164 Ohio St.3d 546, 2020-Ohio-5484.

{¶4} Gardner's defense to the Receiver's claims was that he followed the advice of counsel in voting against settling the defamation action against the association and in opposing dismissal. Consequently, the Receiver sought discovery of all attorney-client materials that Gardner possessed, both as a director of the association and as a representative of his company, Ware Industries. Gardner maintained that most of these attorney communications were protected under the attorney-client privilege, and he moved for a protective order limiting discovery of attorney-client materials to communications made on four days during the defamation-action trial (November 15, 2015, through November 18, 2015) and made between only the directors and the association's attorney, as Ware was not involved in (or a party to) the receivership action.

{¶5} In a July 2, 2021 order, the trial court concluded that Gardner had waived the attorney-client privilege by asserting the advice-of-counsel defense and because the court found that Ware's attorney had participated in the association's settlement discussions. In interrogatory responses, Gardner had said that he had communicated with both Ware's trial counsel and insurance counsel about the possible settlement and dismissal of the

defamation action. So the court rejected Gardner's argument that discovery of attorney-client material should be limited to communications between the directors and the association's trial attorney.

{¶6} The court found that all counsel for all parties participated in the association's decision to reject settlement and dismissal of the defamation action. And the trial court specifically found that following Ware's settlement of the defamation action against it, on October 25, 2015, Ware's attorney was actively involved in substantive discussions with the directors and with the association's attorney about the settlement offered to the association. Therefore, the court concluded that the attorney-client privilege did not protect communications with the association's attorneys that occurred during the defamation-action trial, September 15, 2015, to November 18, 2015, and did not protect communications with Ware's attorneys that occurred from the date that it settled the defamation action, October 25, 2015, through the end of the trial, November 18, 2015. The court made it clear that these waivers applied not just to communications with the association's trial attorney but to communications with any attorney representing the association or Ware.

{¶7} Based on the newly established scope of discovery, the Receiver sought supplemental discovery from Gardner and specifically particular items identified on Gardner's privilege log, including an item identified as Document 58. The Receiver also subpoenaed Ware for relevant documents. Counsel for Gardner and Ware—they shared counsel—moved for a protective order for the documents sought from Gardner and for a protective order for all the documents that Ware had listed on its privilege log. In response, the Receiver moved for in camera review of all the documents.

{¶8} In a May 2022 order, the trial court declined to grant Gardner a protective order, instead ordering him to produce the documents sought by the Receiver for in camera

review. The court did, though, grant Ware a protective order. The court reaffirmed the scope of discovery that it had established in its previous order and noted that the material sought from Ware was mostly available from other sources. Gardner's counsel delivered to the trial court the documents listed in Gardner's privilege log, as ordered. The court found them illegible, though, and asked counsel to resubmit more legible copies, which counsel fatefully did.

{¶9} On June 21, 2022, the court issued an order concerning the results of its in camera review. The court found that most of the documents that the Receiver sought from Gardner "may fail to support Plaintiff's theory of the case" and therefore were protected. One exception, though, was Document 58, which the court described as "an e-mail exchange between [Gardner] and Brian Snarr." The court ordered Gardner to produce this document. When Gardner's counsel read the order, he was initially confused because the court's description of Document 58 did not fit the one listed on Gardner's privilege log. But counsel quickly realized that he had made a mistake: when he resubmitted the documents to the court for in camera review, he had inadvertently included the Document 58 that was listed on Ware's privilege log.

{¶10} Document 58 is described as containing the last e-mail in a chain of three e-mails sent on October 29, 2015 (a few days after Ware had settled the defamation action against it) between Gardner and Brian Snarr, who is an attorney for the association. The topic of the e-mails is known because Gardner produced the first two e-mails in compliance with the July 2021 order. The first e-mail was sent by Gardner and in it he asked Snarr for a legal opinion as to whether Ware and the association's other member companies would be liable if the jury verdict in the defamation action went against the association. The second e-mail contains Snarr's response, his legal opinion. Document 58 contains the third

e-mail, which is apparently Gardner's subsequent reply to Snarr. The third e-mail was not listed on Gardner's privilege log, and neither Gardner nor Ware ever mentioned that Ware's privilege log contained communications between Gardner and one of the association's attorneys.

{¶11} Counsel for Gardner refused to produce Document 58 and instead sent a letter to the trial court and to the Receiver explaining the mistake. The Receiver then moved for sanctions against Gardner, arguing that the document should have been produced already and that Gardner had tried to hide it by listing it on Ware's privilege log.

{¶12} Before the trial court could take any action in the dispute, Gardner and Ware filed the present appeal from the June 2022 order.

## II. Analysis

{¶13} The sole assignment of error alleges: "The trial court erred by ordering Gardner to produce another party's privileged document."

{¶14} As an initial matter, the Receiver challenges our jurisdiction over this appeal, arguing that the June 2022 order is not final and appealable because it does not compel the disclosure of privileged material. "[A] discovery order that is alleged to breach the confidentiality guaranteed by the attorney-client privilege satisfies R.C. 2505.02(B)(4)(b) and is a final, appealable order that is potentially subject to immediate review." *Burnham v. Cleveland Clinic*, 151 Ohio St.3d 356, 2016-Ohio-8000, ¶ 2. All that is needed is a plausible allegation that the attorney-client privilege would be breached by disclosure of the requested materials. *Id.* at ¶ 3. Importantly, this does not mean that the requested material *is* protected but merely that appellate review of the trial court's decision is required. *Id.* We find that Gardner has plausibly alleged that Document 58 is protected by the attorney-client privilege. Therefore, we conclude that the appealed discovery order is final and appealable

and that we do have jurisdiction.

{¶15} The parties also dispute the applicable standard of review—de novo (Gardner) or abuse of discretion (Receiver). "Generally, 'whether the information sought is confidential and privileged from disclosure is a question of law that is reviewed de novo.'" *Total Quality Logistics, LLC v. BBI Logistics LLC*, 12th Dist. Clermont No. CA2021-04-012, 2022-Ohio-1440, ¶ 18, quoting *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, ¶ 13. But "[a]n abuse-of-discretion standard applies when reviewing a trial court's disposition of discovery issues." *Id.*, citing *State ex rel. The V. Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998). Here, as we will see, the trial court's order did not make a privilege determination but merely regulated discovery. Thus, we review the order for an abuse of discretion.

{¶16} "In Ohio, the attorney-client privilege is governed both by statute, R.C. 2317.02(A), which provides a testimonial privilege, and by common law, which broadly protects against any dissemination of information obtained in the confidential attorney-client relationship." *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, ¶ 27, citing *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, ¶ 24. The privilege is intended to encourage full and frank communication between attorneys and their clients and is founded on the premise that confidences shared in the attorney-client relationship are to remain confidential. *State ex rel. Toledo Blade Co.* at ¶ 21. But this privilege is not absolute and may be waived "if the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context." R.C. 2317.02(A)(1).

{¶17} Civ.R. 26(B)(1) generally permits parties to obtain discovery regarding any matter that is relevant and not privileged. Nonparties too can be compelled to produce

documents containing nonprivileged information. Civ.R. 34(C); Civ.R. 45(F). When discoverable information is withheld on a claim of privilege, "the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Civ.R. 26(B)(8). A court may require that the withheld information be submitted to it for a determination of the privilege claim. And a court may issue a protective order defining the scope of discovery. *See* Civ.R. 26(C).

**{¶18}** Here, the claim that the information in Document 58 is protected by the attorney-client privilege has already been determined by the trial court. In the July 2021 order, the court determined that Gardner had waived the privilege for communications between the association and its attorneys made from September 15, 2015, to November 18, 2015. And the court further determined that he had waived the privilege for communications between Ware and its attorneys made from October 25, 2015, to November 18, 2015. No appeal was taken from that order, so these privilege determinations stand as the "law" of this case and define the scope of discovery.[4]

**{¶19}** The attorney-client communication in Document 58 is an e-mail from Gardner, as a director of the association, to an attorney representing the association made on October 29, 2015. The trial court found that the information in the e-mail is relevant to the receivership action. Since the court made no new privilege determination in the order, it

---

4. We are not concluding that the law-of-case doctrine applies here, though it might, as the previous ruling was not appealed when it probably could have been. *See Klaus v. Klosterman*, 10th Dist. Franklin No. 16AP-273, 2016-Ohio-8349, ¶ 11 (saying that the law-of-case doctrine has been "extended * * * to encompass a trial court's adherence to its own prior rulings in circumstances where a trial court ruling could have been appealed, but was not, with certain exceptions"). What we are saying is simply that we assume the previous ruling was the "law" under which the trial court was acting. Gardner here does not contend that the previous discovery ruling was erroneous or otherwise not binding. Also, while the trial court likely could have reconsidered its previous ruling, there is nothing that suggests it did so.

appears the court merely applied the determination that it had made in the July 2021 order.

{¶20} Gardner fails to convince us that Document 58 should not be produced. It is likely that he already should have produced the information. Tellingly, he does not really argue that the e-mail is not discoverable. Indeed, such an argument would be difficult to make given the trial court's previous privilege determinations and especially given that Gardner has already produced the first two e-mails in the chain. Gardner does not explain why the first two e-mails are discoverable but the third is not, and we do not see any justifiable reason for why that should be so.

{¶21} Gardner argues rather that Ohio law protects inadvertently produced privileged documents from discovery, that a party cannot leverage an opposing party's innocent mistake to pierce the attorney-client privilege or obtain privileged documents. But the inadvertent-disclosure rules in Civ.R. 26(B)(8)(b) plainly assume that no privilege determination has been made regarding the alleged privileged information. Which is not the case here.

{¶22} Gardner also argues that the appealed order contradicts the trial court's May 2022 order protecting all the documents listed on Ware's privilege log and contends that the Receiver is attempting to collaterally attack the previous discovery order. But the court did not actually review the documents on Ware's privilege log. It did not know what information was contained in Document 58. Presumably, if the court had reviewed Document 58, it would have ordered production then.

{¶23} Lastly, Gardner argues that Ohio law recognizes that a party may protect a nonparty's privileged document from being produced in discovery.[5] He asserts that Ware

---

5. The Receiver challenges Ware's standing to appeal. Because we find no error with the trial court's order, we do not think it is necessary to address this issue.

is the repository of the association's privileged communications and based this on the fact that he—an association director, acting on behalf of the association—was communicating with the attorney using a Ware e-mail address. The trial court, says Gardner, has ordered him to produce privileged communications that are in Ware's possession. But why then, in response to the July 2021 order, did Gardner produce the first two e-mails in the chain? Regardless, it is not material whether it is Ware that possesses Document 58 because Ware has the same obligation to produce the document as Gardner, by virtue of the subpoena. And as we discussed above, Ware cannot hide behind the May 2022 protective order.

{¶24} The simple fact is that the information in Document 58 is discoverable. It is relevant, and the trial court has determined that the attorney-client privilege that would otherwise protect the information has been waived. To hold that Document 58 should be protected simply because Gardner inadvertently disclosed it would risk creating perverse incentives and unduly exalts form over substance.

### III. Conclusion

{¶25} The sole assignment of error is overruled. The trial court's judgment is affirmed.

PIPER, P.J., and BYRNE, J., concur.